### Worden v. City of Louisville.

June 23, 1939.

As Corrected on Denial of Rehearing Oct. 13, 1939.

Richard P. Dietzman, Special Judge.

B. M. Newburg and C. E. Schindler for appellant.

Laurence S. Poston and Hal O. Williams for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is purportedly a declaratory judgment action, filed in the Jefferson Circuit Court by appellant, Harold W. Worden, as an individual doing business in the name of "National Tailoring Company," against the "City of Louisville." The petition avers that plaintiff is engaged, or about to become engaged—under the name of National Tailoring Company—in the tailoring business within the city, and that he has adopted and intends to or has put in operation a scheme whereby his customers obtain chances to obtain free suits of clothes at each weekly drawing for a period of forty weeks, and that there exists a controversy as to whether or not his scheme conflicts with Section 226 of our Constitution forbidding the operation of lotteries and gift enterprises within the commonwealth, and requiring the General Assembly to enact laws appropriate for the enforcement of the inhibition.

In 1892 our legislature, pursuant to that section, enacted Section 2573 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, penalizing the operation of lotteries and gift enterprises by punishing the violator with a fine of not less than $500 nor more than $5,000, and confinement in the penitentiary not less than two years nor more than five years. The section of the statute also embraced others participating in the forbidden operations by aiding or assisting the actual operators in doing so. At the first 1938 extraordinary session the legislature enacted Chapter 23, on page 1076 of the Session Acts of that year for the regular and first two special sessions, and which amended Section 2573, supra, by adding thereto this proviso: "Provided, however, that the words 'lottery or gift enterprise,' as used in this section, shall not apply to any gift of money, property or other thing of value which is awarded by lot or drawing by mercantile establishments, theatres or newspapers who make such awards to their customers and patrons, and who charge no price and collect no fee for the privilege of participating in such lot or drawing other than the regular prices of merchandise sold, or admission tickets, or subscription price to all customers and patrons whether they participate or do not participate in such awarding."

Plaintiff in his petition contends that the amendment had the effect to exempt his enterprise from the penal consequences of the statute before the 1938 amendment and that the exempting language of the

amendment does not violate Section 226 of the Constitution. In order to obtain a judicial determination to that effect he filed this action against the "City of Louisville" alone, notwithstanding it has nothing whatever to do with the enforcement of either the section of the Constitution or the section of the statute, there not being involved any ordinance of the city, or any such enforcement duties resting upon it as a municipality. Both the section of the Constitution and the section of the statutes relate exclusively to a declared state-wide public policy with the obligation for their enforcement resting exclusively upon the proper state courts and enforcement officials, the defendant, city, being obligated for such enforcement no more than any other single individual within the confines of the commonwealth.

Our Declaratory Judgment Act is chapter IVa forming a part of our Civil Code of Practice and embracing Sections 639a—1 to 639a—12 of that Code. Section 6 of the Act (which is Section 639a—6 of the Civil Code of Practice) says: "The court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances. The appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record. When, in its opinion, further pleadings or proof is necessary to a final and correct decision of the matters involved, or that should be involved, it shall remand the case for that purpose; or if in its opinion the action is prematurely brought, or *where a ruling in the appellate court is not considered necessary or proper at the time under all the circumstances, it may direct a dismissal without prejudice in the lower court.*" (Our emphasis.)

No officer having the power and authority to arrest or prosecute for violations of state-wide statutes, applicable to all portions of the state alike, including the city of Louisville, was made a party to the action. On the contrary, as we have seen, only the incorporeal municipality of "City of Louisville" was made a defendant. Such an incorporeal governmental unit possesses no authority, except that conferred upon it by either the Constitution or statute enacted pursuant thereto. We have examined our Constitution, as well as the statutes

relating to cities of the first class, to which Louisville belongs, and we have found nothing imposing the duties upon such a city to apprehend violators of purely state statutes, or to prosecute and punish them as directed in the statutes. In opposition thereto our attention is called to the cases of Kerr v. City of Louisville, 271 Ky. 335, 111 S. W. (2d) 1046; Brittain v. United States Fidelity & Guaranty Company, 219 Ky. 465, 293 S. W. 956; Dudley v. City of Flemingsburg, 115 Ky. 5, 72 S. W. 327, 24 Ky. Law Rep. 1804, 60 L. R. A. 575, 103 Am. St. Rep. 253, 1 Ann. Cas. 958; Pollock's Adm'r v. Louisville, 13 Bush 221, 26 Am. Rep. 260, and Greenwood v. Louisville, 13 Bush 226, 26 Am. Rep. 263, but in each of them the questions involved were those upon which the legislature had expressly conferred authority upon the city to function for the state within its corporate limits with reference to the matters involved, in the manner attempted by it, and to that extent there was an express delegation of authority upon the municipality to so function for the state. In those opinions or some of them, it was expressly recognized that a municipality could not only be so vested with the performance of purely state functions, but that when it was done by the legislature the city occupied a dual capacity—one purely as a municipality and the other purely as agent for the state within its corporate limits to so function in the enforcement of purely state-wide laws. Likewise, as in the Dudley case, it was recognized that a municipality also occupies a dual capacity by functioning strictly governmentally, and also as privately in certain cases not necessary to be mentioned here

But none of such rulings touch the question here involved, nor do they declare expressly or by necessary implication that it is the *duty* of a municipality to enforce the criminal laws of the state in which it is located and which are applicable alike to all portions of the state, including the particular municipality. But even so, it is then insisted that—as charged in plaintiff's petition—he was threatened to be molested or disturbed by the police department of the City of Louisville in the prosecution of his enterprise in the manner contemplated, and that since the police department was an arm of the city government it thereby became the potential prosecutor of plaintiff. But that contention overlooks the provisions of 2869 of our present Statutes (a part of the charter of cities of the first class) saying that

officers of the police department "shall possess all the common law and statutory powers of constables, except for the service of civil processes." It vested police officers with the authority to enforce within their jurisdictions violations of purely state statutes, and for such purpose and to that extent made such policemen state enforcement officers, and the same was and is true with reference to prosecuting officers if and when such authority may be conferred upon them. The case is therefore not one where the involved law was only a municipal one created by ordinance of the city council, or otherwise localized with exclusive authority on the part of the city to enforce. That being true the city as such was and is functus officio in the premises and which rendered it not only an unnecessary defendant, but a wholly improper one. If it were otherwise, then a country village of the sixth class could likewise be made sole defendant in a similar action under similar facts, exclusively testing the validity of a state-wide statute, and the commonwealth would thereby be bound by a judgment holding the statute unconstitutional however important and meritorious it might be. We are convinced that no such practice was ever contemplated by the legislature in the enactment of the declaratory judgments statute.

Our conclusion is, therefore, that the petition was fatally defective because of such omissions—to say nothing about the merits of the cause—and the court should have (but its attention was not called thereto) dismissed the petition for the reason stated, the case being practically on all fours with that of Revis v. Daugherty, Attorney General, 215 Ky. 823, 287 S. W. 28, 29. Instead, however, the learned trial judge sustained defendant's general demurrer filed to the petition and held that the 1938 amendment to Section 2573 was unconstitutional and, therefore, void, and which also involved a determination by the court that plaintiff's enterprise came strictly within the purview of a "lottery" or "gift enterprise" as employed in both the section of our Constitution and the section of our Statutes, supra. We would have no trouble whatever in agreeing with that conclusion and affirming the judgment were it not for the error in the practice hereinbefore referred to, since there can be no reasonable doubt but that the enterprise that plaintiff proposes to launch and operate embodies all of the evil features of a lottery, but if not technically so,

it is undoubtedly such a "gift enterprise" as both the Constitution and the statute intended to denounce and prohibit.

In the Daugherty case, supra, the plaintiff therein desired to become a candidate to fill a vacancy in the office of sheriff of Leslie county at a general election at which a United States Senator and members of Congress were to be elected. He proceeded to write out his grievances in a paper which he designated "petition," and he made the attorney general of the state the sole defendant. In disposing of the appeal taken by plaintiff from an adverse judgment against him in the trial court, we said, inter alia: "So far as a legal presentation of the question is concerned, the plaintiff had as well made the Governor of the commonwealth or any other officer of the state, or of any county therein, or any individual that might be found therein, a defendant in his alleged petition. As drawn, it is of no more legal efficacy than would have been a letter written to the judge of the court to obtain his opinion upon a purely academic question."

We then said that the court "should have dismissed the petition for want of jurisdiction, and for its failure to do so the judgment is reversed, with directions to proceed in conformity herewith." The principles involved in that case are exactly analogous to those in this one so far as the practice under the Declaratory Judgments Act is concerned. The reader is also directed to the cases of Axton v. Goodman, 205 Ky. 382, 265 S. W. 806; Shearer v. Backer, 207 Ky. 455, 269 S. W. 543; Ezzell v. Exall, 207 Ky. 615, 269 S. W. 752; Coke v. Shanks, 209 Ky. 723, 273 S. W. 552; H. C. Heller & Co. v. Hunt Forbes Construction Company, 222 Ky. 564, 1 S. W. (2d) 970; Lyons' Adm'r v. Greenblatt, 213 Ky. 567, 281 S. W. 487; Supreme Tent of Knights of Maccabees v. Dupriest, 235 Ky. 46, 29 S. W. (2d) 599; Mason's Adm'r v. Mason's Guardian, 239 Ky. 208, 39 S. W. (2d) 211, and cases cited in those opinions.

As stated supra, neither party to the action raised the question of the errors in the practice—as hereinbefore pointed out—by the filing of a special demurrer to the petition for a defect of parties defendant, or otherwise. The only step taken (as we have also stated) was the filing by the city of a general demurrer to the petition, and because of such failures it might be insisted

that this court has no right to consider the questions which the parties themselves did not raise in the trial court. But that position is untenable in this character of procedure (declaratory judgment actions), since a part of Section 6 of the act—being 639a—6 of the Code—says: "The appellate court in its consideration of the case, shall not be confined to errors alleged or apparent in the record."

The order of the chancellor in dismissing the petition has the same effect as if he had pursued the technically correct course, since it put the case off the docket. But it did so by passing upon the merits, thereby rendering the judgment (at least apparently) binding upon the commonwealth by setting aside one of its duly enacted statutes in a proceeding where it was not properly represented because of the reasons and failures in practice hereinbefore pointed out.

Therefore, pursuing the directions made in the Daugherty case, supra—and in some of the others we have cited—we have concluded that the judgment should be reversed with directions to set it aside and to dismiss the action for want of proper parties defendant. We so conclude because, like in the Daugherty case, no proper party was made a defendant. The case is therefore unlike one where some of the parties defendant were proper ones, but other necessary ones were omitted, in which case we have in some of our opinions directed a reversal with an order to bring in the omitted necessary parties by an amendment. However, in this instance no authorized case at all has ever been in court, and the document called a "petition," therefore, is nothing more than a letter written to the court for advice in the circumstances. The statute was never intended to force the courts to become such correspondents. On the contrary, it requires the aggrieved or complaining litigant to "justifiably" present a justiciable question in order to confer jurisdiction.

Wherefore, the judgment is reversed with directions to set it aside and to render one dismissing the petition without prejudice for want of proper jurisdiction in the court to entertain it, and for other proceedings consistent with this opinion; the whole Court sitting.