**COMMONWEALTH of Kentucky, Appellant,**

v.

**Buddy ALLEN, Appellee.**

Court of Appeals of Kentucky.

July 1, 1966.

Robert Matthews, Atty. Gen., Robert Preston, Asst. Atty. Gen., Frankfort, for appellant.

S. Stanton Baker, Jr., Louisville, for appellee.

## CERTIFYING THE LAW

DAVIS, Commissioner.

The Commonwealth has appealed from the ruling of the trial court which dismissed Count One of an indictment against appellee as failing to state facts constituting a violation of KRS 436.360. Certification of the law is sought pursuant to KRS 21.140 (3).

The language of Count One of the indictment is:

"That during the year 1964, in Jefferson County, Kentucky, the above named defendant conducted, managed, or promoted the business of Gem Distributing Company, a lottery or gift enterprise."

The appellee was named as the defendant in the caption of the indictment; KRS 436.360 was designated in the caption as the basis for Count One of the indictment.

Appellee made timely motion for a bill of particulars. RCr 6.22. The trial court sustained that motion and a bill of particulars was filed which stated, in pertinent part:

"Question 1. The aspects of the business of Gem Distributing Company which are alleged to constitute a lottery or gift enterprise.

Answer 1.

(a) The salesmen of the Gem Distributing Company solicit names from customers, which names are supposedly to provide future sales.

(b) The person giving this name is induced to believe that he will pay for the products by submitting these names.

(c) The product itself has an inflated price significantly higher than if he had bought it under some other plan than the 'referral selling plan.'

(d) The customer is assured that he or she will receive some prize, either money or credit, or something of value as a result of submitting these names.

(e) There is no assurance that the salesmen or the company will ever contact the names supplied by the customer, or that if the people are contacted they will allow the salesman to demonstrate the product or that the persons contacted will in any way be interested in the product.

Question 2. The particular operation of said business which is alleged to constitute a selection of a prize winner by lot or chance.

Answer 2.

(a) The 'prize' is described in Answer 1. (d).

(b) The 'chance' is the part of the Gem Distributing Company business which allows a former customer to obtain his prize by the happening of a future event, for example, an interview, a demonstration, a sale."

It was in face of the statements in the bill of particulars that the trial court ruled that no violation of KRS 436.360 was charged. The Commonwealth insists that the trial court's ruling was erroneous and asks that the law be so certified.

Section 226 of the Kentucky Constitution provides:

"Lotteries and gift enterprises are forbidden, and no privileges shall be granted for such purposes, and none shall be

exercised, and no schemes for similar purposes shall be allowed. The General Assembly shall enforce this section by proper penalties. All lottery privileges or charters heretofore granted are revoked."

KRS 436.360 is a statutory enactment implementing Section 226 of our Constitution, and at the pertinent period in this case provided:

"Any person who sets up, conducts, manages, operates, draws or otherwise promotes or assists in setting up, conducting, managing, operating, drawing or in otherwise promoting any lottery or gift enterprise, whereby money or anything of value is or is pretended to be disposed of, or any person who writes, prints, sells, exchanges, disposes of, supplies or procures or causes to be supplied or procured, to or for any person, or has in his possession or under his control, with intent, for himself or another, to sell, exchange, dispose of or supply any ticket, share or part of a ticket, or any writing, print, paper, certificate, token or device purporting, designed or intended to give or entitle the holder or any other person to any prize, share or interest in any prize, or to any right, share or interest whatever in any lottery or gift enterprise in or out of this state or in or to any drawing of or in or to the result of any lottery or gift enterprise in or out of this state shall be fined not less than five hundred dollars nor more than five thousand dollars, and shall be confined in the penitentiary for not less than two nor more than five years."

The plan or scheme charged against appellee is one which is often referred to as a "referral selling plan." The bill of particulars sufficiently identifies the charged conduct as being within the scope of the usual "referral selling plan."

In Sherwood & Roberts-Yakima, Inc., v. Leach, Wash., 409 P.2d 160, the Washington Supreme Court held that a "referral selling plan" was a lottery and contravened a Washington statute. The applicable statute substantially incorporated the familiar elements of a lottery scheme as including (1) the distribution of money or property— a prize, (2) chance, and (3) a valuable consideration paid or to be paid for the chance. In that case, as here, there was no issue concerning the presence of the "prize" and the "consideration." The chief bone of contention is whether the scheme includes "chance" as that term is understood incident to gaming law.

The argument was presented in Sherwood & Roberts-Yakima that "chance" did not appear in the plan, since the "skill" of the customer in selecting "live" prospects for "referral" removed the element of "chance." In rejecting that contention the Supreme Court of Washington said, in part:

"Assuming that respondents in fact used skill or judgment in selecting the referrals, the trial court properly held that chance permeates the entire scheme. The court found that respondents took a chance that the referrals might not be interested; that the salesman might not adequately make his presentation; that the referral might have already been referred by someone else; that the market might be saturated; and that the salesman might not even contact the referral. In addition, the trial court noted that respondents have no control over the general operation after they gave the names of referrals. In fact, respondents were told not to contact the referrals before the * * * salesman made his presentation, and respondents were told to emphasize the money-making program in case the referrals contacted them. Appellant argues that the want of control is not a legitimate factor to consider. This argument is tenuous.

"The lack of control feature in referral selling is much broader than that designated by the trial court. It is inherent in referral selling that purchasers such as respondents be without control. Sooner or later, the market, unknowingly to the purchasers, will become saturated.

This principle is the same as in the chain letter scheme." Ibid. 409 P.2d 163.

In the same opinion, the Washington Supreme Court further stated:

"Respondents took a chance on whether they could get something for nothing. This chance permeates the entire scheme of referral selling. This court holds that the referral selling scheme is a lottery." Ibid. 409 P.2d 164.

We are persuaded to the view as ably expressed in the cited Washington decision. We have considered fully the decision of Yoder v. So-Soft of Ohio, Inc., Ohio, 202 N.E.2d 329, in which the Court of Common Pleas of Ohio, Stark County, reached an opposite result. However, we deem the reasoning of the Washington Supreme Court to comport with our view of the "referral selling plan" as opposed to the position adopted by the Ohio tribunal.

We do not regard it as essential to determine whether a "referral selling plan" is a "lottery" or a "gift enterprise." The cited constitutional provision as well as the pertinent statute refer to "lottery" and "gift enterprise" disjunctively, but neither undertakes a specific definition for "lottery" or "gift enterprise." It is significant that the Indiana Supreme Court stated, as early as 1881, that a "gift enterprise" was " * * * understood to be substantially a scheme for the division or distribution of certain articles of property, to be determined by chance, amongst those who have taken shares in the scheme, and the phrase has attained such a notoriety as to justify us in taking judicial notice of what is meant and understood by the use of it." Lohman v. State, 81 Ind. 15, 17–18. The "notoriety" mentioned by the Indiana court in 1881 doubtless had "crossed the river" by the time our present Constitution was adopted.

In Worden v. City of Louisville, 279 Ky. 712, 131 S.W.2d 923, this court discussed a "suit plan" as if it considered it to be a "gift enterprise"—if not a "lottery." It is true, as suggested by appellee, that the discussion in the Worden opinion was obiter dictum but the reasoning employed by the court there is apt here. In Worden the court pointed out that whether the scheme be considered a "lottery" or a "gift enterprise" it embodied all of the evil features of a lottery.

Neither are we impressed by the argument that the action of the 1966 General Assembly in amending KRS 436.360 demonstrates that the legislative branch of our government considered that "referral selling" was not within the inhibition of the existing statutory law. It is noted that by the 1966 amendment "referral selling" is specifically brought within the purview of KRS 436.360, but that action may as well indicate the desire of the legislature to remove all doubt of its intention as to indicate an expression of its belief that "referral selling" was exempted from the prohibition of the statute then in force.

It is our view that the trial court erred in dismissing Count One of the indictment, and the law is so certified.